OLYPHANT *v.* ST. LOUIS ORE & STEEL Co. and others.[1]

*(Circuit Court, E. D. Missouri.* March 26, 1885.)

1. PARTIES—FORECLOSURE SUIT—MORTGAGE ON PROPERTY NOT EMBRACED IN MORTGAGE TO COMPLAINANT.

B., a corporation, mortgaged its property to X. Subsequently it consolidated with the owner of some mining property, and the consolidation was called C. C. gave a mortgage upon all its property to Y., and afterwards gave a mortgage to Z. upon all its property except that covered by the mortgage to X. Upon default Z. instituted foreclosure proceedings against B., and made X. and Y. parties. Upon X.'s demurring, *held,* that he is a proper party.

2. MORTGAGES—SEPARATE FORECLOSURE PROCEEDINGS BY PARTIES HOLDING MORTGAGES ON DIFFERENT PIECES OF PROPERTY.

*Semble,* that though X. is a proper party to said suit, he is entitled to leave to institute separate foreclosure proceedings and have the property covered by his mortgage sold by itself, in the absence of equitable reasons estopping him from insisting on such right; and the fact that some of the principal bondholders under the first mortgage have mining property which is in interest antagonistic to the mining property belonging to the consolidated company, does not constitute any equitable reason for denying them that privilege.

In Equity. Foreclosure suit. Demurrer to bill.

*E. T. Allen,* for complainant.

*Noble & Orrick,* for demurrants.

BREWER, J., *(orally.)* In the case of *Olyphant* against *Ore & Steel Co.,* where a demurrer has been filed by the trustees of the first mortgage, a mortgage given by the old Vulcan Company upon its plant in south St. Louis, the facts are that in 1875 the Vulcan Company, owning the plant here in south St. Louis, executed a million dollar mortgage to Edgar and Lackland, trustees. That mortgage covered its property, and it had but this property. The bonds secured by that mortgage become due on the fifteenth of next month. The interest due last fall is unpaid. Some years after that mortgage had been given, the mortgagor consolidated with the owner of some mining properties, thus forming the "Ore & Steel Company." That consolidated corporation bound itself to pay the mortgage on this south St. Louis plant. After the consolidation, a mortgage was given to the Farmers' Loan & Trust Company, a New York corporation, on the entire properties. Subsequent thereto a mortgage was given to Messrs. Olyphant and Hitchcock on the properties, excluding the property in south St. Louis, upon which the old Vulcan mortgage was given. So it stood in this condition: The Farmers' Loan & Trust Company had a mortgage on all the properties, a mortgage subsequent to the Lackland mortgage on the property in south St. Louis, and prior to that to Olyphant and Hitchcock on all except the south St. Louis properties. Now, while the mortgagees in this first mortgage are not necessary parties, yet it would seem to us that they were proper parties; that the Farmers' Loan & Trust Company mortgage is a connecting link that

[1]Reported by Benj. F. Rex, Esq., of the St. Louis bar.

binds the interests all together; for, when this Vulcan property is sold to pay its first mortgage, if there be a deficiency, whether that deficiency stands as an indebtedness against the other property, subordinate to the mortgages already existing thereon, or prior thereto, is a question which of course ought to be determined, and will affect the value of these mortgages and the property sold. So, as far as the demurrer is concerned, we think it may be properly overruled. But the question that lies back of that, perhaps the real and substantial question in the case, is whether these first mortgagees of the south St. Louis property should be delayed in the foreclosure of that mortgage, and compelled to abide the sale of the entire properties, and as an entirety.

Generally speaking, if a mortgagee loans money on a single piece of property, he has a right when default comes to have that property by itself sold, and for obvious reasons. Take the case at bar. Here is a mortgagee who loans a million of dollars on manufacturing property. Default has occurred. Why should he not be at liberty to foreclose his mortgage on that property on which he made his loan, if it fails to pay his debt? He may say, "I will take that property." Why should he be compelled to put his hands in his pocket and advance two or three millions more to buy other properties, which he may not want, which he never loaned his money on, and which he had no thought of at the time he made his loan. He dealt with the mortgagor owning the particular piece of property; he made his loan upon that particular piece of property; and now says to the mortgagor, it not paying: "I want the property sold; if I have to buy it in, well and good. At any rate, I don't want to be mixed up in the other matters, and have that property put up for sale with a large bulk of property which I may not be able to buy, and which I might not want to buy if I was able." It seems to us that he would have such a right as that, unless, of course, as Mr. Allen suggested, there may be equitable reasons estopping him from insisting on such right. In the case at bar, the bondholders, represented by the mortgagee in the first mortgage, may have so conducted themselves at the time of consolidation in respect to it that there may be equities against their apparent present right. But if there be such equities, they are not now disclosed to us. It stands before us simply upon the fact that here is a mortgage upon a single property, given before any other properties belonged to the mortgagor, which has come to default, and which the mortgagee says he wants to have sold to pay the debt.

It has appeared incidentally, in the course of this litigation, that some of the principal bondholders in this first mortgage—this Vulcan mortgage—have mining properties, or ore properties, which are in interest antagonistic to the ore properties which belong to this consolidated company. So be it. I do not see any equitable reason, in that, why they should not have this manufacturing property on which they loaned sold. Very naturally, if they have ore properties, they

may say, "We don't want any of the ore properties of this Ore & Steel Company. All we do want is this manufacturing property, and that we loaned our money on, and that we can, if we buy, unite with our ore properties, and thus make those properties valuable." So, whatever conflict of interest there may be between the ore properties now held by the Ore & Steel Company and those owned by the bondholders in the original Vulcan mortgage furnish no ground for saying, "You cannot buy this manufacturing property without you buy the entire properties subsequently accumulated by the mortgagor." Hence, we say, while the demurrer to the bill is overruled, there is also a petition for leave to foreclose that prior mortgage speedily, and the order will be that, unless by the eighteenth of April reasons are shown which make it inequitable,—something which raises what you may call an equitable estoppel on the mortgagees,—they will be permitted to proceed with the foreclosure of that separate mortgage upon the Vulcan property,—the south St. Louis property; such foreclosure and sale to be subject to the order of the court, in order that there may be nothing done which will go against the equities of any of the parties connected with this Ore & Steel Company. Whatever may be said, as was said by counsel, as to the default in interest last fall having been brought about by the action of these bondholders in issuing attachments and other proceedings, even assuming they were guilty of wrong in that, now the principal is due, and certainly they ought not to be deprived of or postponed as to that because of any interference which they may have been guilty of in respect to the mere matter of interest six months ago.

My brother TREAT suggests, and I think the interests of all parties will be promoted in so doing, that in view of what has been decided, and with the expectation that the property will be sold at an early day, full notice should be given immediately, and the information disseminated, so that all parties interested in such properties may commence to make arrangements accordingly.

*Mr. Noble.* Do I understand notice of foreclosure under the deed?
*The Court,* (TREAT, J.) No. The suggestion is this: The order of the court, as stated by Brother BREWER is, unless by the eighteenth of April the principal and interest is paid, you proceed to foreclose according to the terms, but in the mean time—and it is a mere suggestion—let it be known that the property will be in the market, by advertisement.
*Mr. Noble.* The Bessemer steel process belongs to the Vulcan property, and is to be sold at the same time. The order should include that, that the property may be sold together with the Bessemer steel process.
*The Court,* (TREAT, J.) Your right to do that?
*Mr. Noble.* I will prepare an order in regard to that.

*Mr. E. T. Allen.* If I understand the suggestion of the court, it was, unless cause was shown by the eighteenth of April why some such order should not be made, on that day that such an order would then be made. I apprehend there will be cause shown before that time why such an order should not be made, and that we will ask the court to consider. If I understand Judge BREWER, if we do not, there will be an order entered as of this date in reference to this transaction?

*The Court,* (BREWER, J.) It makes little difference which way you get at it. The order goes, unless good reasons to the contrary are shown.

*Mr. Noble.* I understand it to be that it is now ordered, unless cause be shown on or before the eighteenth of April next to the contrary, that the trustees, Lackland and Edgar, have leave to proceed to sell under the powers of the deed of trust all the property therein described, together with the Bessemer steel process referred to in their application?

*The Court,* (BREWER, J.) So far as appears to us now, on the general legal rights of the parties, we think they have the right to proceed, and the order is that you go on, and give the other side to the eighteenth of April to make such a showing as would justify the court in postponing the proceedings.

*Mr. Allen.* Permit me to call your honors' attention to the fact, so far as the plaintiff in this case is concerned in this Bessemer process, the demurrer was the only matter before the court at the time of the hearing. No arguments, in effect, were addressed to your honors in reference to this particular subject-matter, in regard to which the court has made a limited order. I only desire to call the attention of your honors to the fact that the reasons urged hitherto by the complainant why such course should not be taken, were not brought to your honors' attention.

*The Court,* (BREWER, J.) You have until the eighteenth of April to bring it to our attention, if the matter don't appear on record. The matter is in the hands of the court until that time.